FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Mar 03, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GIDEON T.,[1]

                    Plaintiff,

        v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    4:21-cv-5135-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION,
DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION,
REVERSING THE ALJ DECISION,
AND REMANDING FOR AN
AWARD OF BENEFITS**

        Plaintiff Gideon T. appeals the denial of benefits by the Administrative Law

Judge (ALJ).  Because the ALJ failed to provide legally sufficient reasons for

rejecting disabling medical opinions, the Court reverses the ALJ's decision.

Additionally, the Court finds this is a rare case warranting remand for an

immediate award of benefits.

///

//

/

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as
"Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

///

//

/

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

1

## II.    Background

2      In March 2018, Plaintiff filed applications for disability benefits under

3 Title 2 and Title 16, alleging disability beginning December 2017 due to vision

4 problems, anxiety, depression, vocal-tic disorder, autism spectrum (Asperger's

5 syndrome), obesity, and sleep apnea.[8]  After his applications were denied initially

6 and again upon reconsideration, Plaintiff requested a hearing.

7 ### A.    2020 ALJ Hearing, Decision, & Remand

8      In January 2020, ALJ Mark Kim held a hearing at which Plaintiff and a

9 vocational expert presented testimony.[9]  In the resulting decision, the ALJ found

10 Plaintiff had the severe impairments of autism-spectrum disorder, vocal-tic

11 disorder, depressive disorder, anxiety disorder, math/reading learning disorder,

12 and obesity.[10]  The ALJ concluded that despite these severe impairments, Plaintiff

13 could perform the representative-job requirements of a janitor, hand packager, and

14 electronics worker.[11]  However, in August 2020, the Appeals Counsel reversed the

15 ALJ's decision and remanded the case for the same ALJ to, among other things,

16 reassess the medical-opinion evidence and further evaluate Plaintiff's mental

17 impairments.

18

19 _____

20 [8] AR 103, 320–42.

21 [9] AR 48–76, 158.

22 [10] AR 161.

23 [11] AR 166–67.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

**B.    2021 ALJ Hearing & Decision**

2          In February 2021, the ALJ held another hearing.  At this second hearing,

3   the ALJ received further testimony from Plaintiff and the vocational expert.[12]

4   After the hearing, the ALJ denied Plaintiff's disability applications.[13]  As to the

5   sequential disability analysis, the ALJ found:

6   - Plaintiff met the insured status requirements through March 31, 2019.

7   - Step one: Plaintiff had not engaged in substantial gainful activity since

8      December 23, 2017, the alleged onset date.

9   - Step two: Plaintiff had the following medically determinable severe

10     impairments: autism-spectrum disorder, vocal-tic disorder, depressive

11     disorder, anxiety disorder, and obesity.

12  - Step three: Plaintiff did not have an impairment or combination of

13     impairments that met or medically equaled the severity of one of the

14     listed impairments.

15  - RFC: Plaintiff had the RFC to perform a full range of work at all

16     exertional levels but with the following nonexertional limitations:

17     o  never climb ladders, ropes, or scaffolds, and only occasionally crawl;

18     o  no exposure to unprotected heights;

19     o  only simple, routine and unskilled tasks that involve only occasional

20        job-related decision making;

21

22  [12] AR 77–78.

23  [13] AR 15–34.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

> - only occasional and simple changes in the work setting;

> - no fast-paced type tasks; and

> - no work involving any interaction with the public.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, he could perform work that existed in significant numbers in the national economy, such as janitor, hand packager, and automobile detailer.[14]

In reaching his decision, as to medical opinions regarding Plaintiff's mental limitations, the ALJ found,

- "generally persuasive" the June and November 2018 opinions of state-agency reviewing psychological consultants Bruce Eather, PhD, and Jan Lewis, PhD;

- "generally persuasive" (subject to certain exceptions) the September 2016 opinion of examining psychologist Jameson Lontz, PhD;

- "partially persuasive" the October 2018 opinion of examining psychologist Patrick Metoyer, PhD;

- "unpersuasive" the February 2018 opinion of examining psychologist N.K. Marks, PhD;

- "unpersuasive" the February 2018 opinion of state-agency reviewing psychological consultant Melanie Mitchell, PsyD; and

---

[14] AR 33–34.

- "unpersuasive" the November 2012 opinion of vocational rehabilitation counselor Monica Orellana, VRC.[15]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms are "not entirely consistent with the medical evidence and other evidence in the record."[16]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[17]  Plaintiff timely appealed to the Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[18] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[19]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]

---

[15] AR 28–32.

[16] AR 23.

[17] AR 1–6.

[18] 42 U.S.C. § 405(g).

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[20] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1    Moreover, the Court considers the entire record.[21]  Because it is the role of

2    the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the

3    ALJ's findings "if they are supported by inferences reasonably drawn from the

4    record."[22]  And the Court may not reverse an ALJ decision due to an error that is

5    inconsequential to the ultimate nondisability determination."[23]

## IV.    Analysis

Plaintiff argues that the ALJ erred by (1) improperly assessing the medical

opinions of examining psychologists, (2) discounting Plaintiff's symptom reports for

being inconsistent with the record, (3) failing to find Plaintiff met or equaled

Listing 12.10, and (4) crafting an RFC that failed to include all of Plaintiff's

functional limitations.[24]  As explained below, the Court finds the ALJ reversibly

erred in assessing the medical-opinion evidence, and the record supports

remanding for an immediate award of benefits.

---

[21] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must

consider the entire record as a whole, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion," not simply the

evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383,

386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that

such evidence was not considered[.]").

[22] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[23] *Id.* (cleaned up).

[24] *See generally* ECF No. 14.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

**A.    Medical Opinions: Plaintiff shows consequential error.**

2      An ALJ must consider and evaluate the persuasiveness of all medical

3  opinions and prior administrative medical findings.[25]  The factors for evaluating

4  persuasiveness include, but are not limited to, supportability, consistency,

5  relationship with the claimant, and specialization.[26]  Supportability and

6  consistency are the most important factors, and the ALJ is required to explain how

7  both were considered.[27]  Typically, the ALJ may, but is not required to, explain how

8  the other factors were considered.[28]

9      **1.    Dr. Lontz: Plaintiff shows consequential error.**

10      In September 2016, Jameson Lontz, PhD, performed a comprehensive

11  psychological evaluation of Plaintiff, during which Dr. Lontz conducted a clinical

12  interview and administered several tests/assessments.[29]  Dr. Lontz also spoke with

13  Plaintiff's mother and reviewed medical records from July 2016 in addition to an

14  Individualized Education Plan that was in place while Plaintiff attended

15  elementary and/or middle school.[30]

16

17  [25] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68; *see* 20

18  C.F.R. §§ 404.1520c(a), 416.920c(a).

19  [26] 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

20  [27] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

21  [28] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

22  [29] AR 964–75 (duplicated in part at AR 607–16).

23  [30] *See, e.g.*, AR 560.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1        Dr. Lontz diagnosed Plaintiff with autism-spectrum disorder, without

2   accompanying intellectual impairment, as well as persistent vocal-tic disorder.[31]

3   Dr. Lontz opined that Plaintiff "demonstrated marked deficits in verbal and

4   nonverbal communication which are ongoing," and that Plaintiff's "[s]ocial

5   impairments have continued despite support throughout schooling as well as at

6   home by his parents."[32]  Dr. Lontz further said, "Difficulties coping with change

7   across settings are obvious to the casual observer and [Plaintiff] will require

8   ongoing supports to address these concerns."[33]

9        Dr. Lontz believed that "with a high school diploma, and higher than

10  average verbal skills, [Plaintiff] could certainly be employed in some capacity."[34]

11  But Dr. Lontz noted that Plaintiff "will require accommodations to some degree

12  indefinitely."[35]  Dr. Lontz suggested that Plaintiff "contact rehabilitation services

13  to assist him in maximizing occupational success."[36]  Dr. Lontz also said, "During

14  the workday, [Plaintiff] is encouraged to take frequent breaks of short duration

15  (e.g., 15 minute breaks every 60–90 minutes during the workday.)"[37]

16  _____

17  [31] AR 971.

18  [32] AR 970.

19  [33] AR 970.

20  [34] AR 970.

21  [35] AR 971.

22  [36] AR 971.

23  [37] AR 971.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1    The ALJ found Dr. Lontz's opinion generally persuasive, noting it was the

2  most comprehensive evaluation on record and that Dr. Lontz administered "a

3  battery of formal testing."[38]   However, the ALJ found the assessed marked deficits

4  in verbal and nonverbal communication "are not supported by the claimant's

5  presentation on exam nor his reported activities/functioning."[39]

6              a.    _Supportability Factor_

7          In explaining why he found the opined marked deficits in communication to

8  be unsupported, the ALJ said, "while Dr. Lontz noted claimant had frequent

9  stutter in speaking, he indicated claimant's speech was generally within normal

10  limits, and claimant was otherwise 'pleasant, appropriately engaged,' 'personable

11  and polite,' euthymic and appropriate mood/affect, and 'gave a good response to

12  humor,' also 'offered jokes on occasion.'"[40]   The ALJ, however, did not explain how

13  these observations undermined Dr. Lontz's assessment or why someone who is

14  seriously limited in his ability to communicate cannot also be polite and have a

15  sense of humor.[41]

16

17  [38] AR 29.

18  [39] AR 29.

19  [40] AR 29 (quoting in part AR 966).

20  [41] _Cf._ 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(F)(2)(d) (defining a

21  "marked limitation" for purposes of mental disorders to mean that "functioning in

22  this area independently, appropriately, effectively, and on a sustained basis is

23  seriously limited").

Further, Dr. Lontz offered substantial support for his determination that Plaintiff demonstrated "several deficits in social communication and interaction across settings (currently and by history)."[42]  For example, not only did Plaintiff stutter "frequently" while speaking, but also his persistent vocal-tic disorder took the form of "stressing certain syllables and repeating other syllables."[43]  Dr. Lontz noted that Plaintiff's "unusual tone and rhythm of speech which makes it difficult to carry a conversation so as to form and maintain peer relationships" was of particular concern to Plaintiff's mother.[44]  And Dr. Lontz explained that Plaintiff's behavior "may strike others as unusual, annoying, or irritating, and therefore lead to increased anxiety and depression as a result of social disconnect[.]"[45]

The ALJ failed to provide a valid reason supported by substantial evidence for discounting portions of Dr. Lontz's opinion as being unsupported.

### b.    *Consistency Factor*

The ALJ stated, "The assessed marked deficits are also not consistent with claimant's ability to shop in stores independently, help his parents (including with transportation and shopping), socialize regularly with church members/friends, and his work as an order delivery driver for Door Dash."[46]  In assessing

---

[42] AR 969.

[43] AR 966, 970.

[44] AR 969.

[45] AR 969.

[46] AR 29–30.

1   consistency, an ALJ may properly consider a claimant's reported daily activities,

2   and any incongruity between a doctor's opinion and those activities and/or other

3   evidence.[47]  But the ALJ did not explain how the identified activities are

4   inconsistent with a marked limitation in communication.[48]

5       Neither checking out at a store nor working as a delivery driver for

6   DoorDash inherently involves more than superficial in-person interaction and

7   communication.[49]  Without more, nothing in the record suggests that such activity

8   is beyond the capabilities of someone with marked communication deficits.[50]

---

10   [47] *See* 20 C.F.R. § 404.1529; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

11   2008).

12   [48] Additionally, as discussed below, the record indicates that Plaintiff's reported

13   daily activities may reflect an exaggerated view of his abilities.

14   [49] Based on common experience, as well as the company's website, DoorDash food-

15   delivery orders are handled through its mobile app and website, with the entire

16   process requiring little-to-no human interaction. *See* www.doordash.com; *see also*

17   AR 92 (Plaintiff indicating that, particularly amid the Covid-19 epidemic, it was

18   rare to physically hand an order to a customer.).

19   [50] *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that a

20   claimant's ability to engage in *some* activities "does not contradict the evidence of

21   otherwise severe problems"); *cf. also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th

22   Cir. 2001) (noting that the Ninth Circuit has "repeatedly asserted that the mere

23   fact that a plaintiff has carried on certain daily activities, such as grocery

1    Similarly, the ALJ gave no reason why someone with the assessed marked

2    limitations would be incapable of sometimes helping parents with household chores

3    and/or maintaining a small group of church friends.[51]  Indeed, parents, as well as

4    church friends, are particularly likely to be more familiar with Plaintiff, better

5    understand him, and continue engaging with him despite his communication

6    deficits.  Moreover, Dr. Lontz's observations and opinions are largely consistent

7    with those of the other psychologists who conducted in-person evaluations of

8    Plaintiff.[52]

9         The ALJ failed to provide a valid reason supported by substantial evidence

10    for discounting portions of Dr. Lontz's opinion as being inconsistent with other

11    evidence of record.

12

13    _____

14    shopping, . . . does not in any way detract from h[is] credibility as to h[is] overall

15    disability").

16    [51] *Cf. Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are

17    not easily transferable to what may be the more grueling environment of the

18    workplace . . . ."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability

19    claimants should not be penalized for attempting to lead normal lives in the face of

20    their limitations.").

21    [52] *See* AR 601–06, 659–63. *But see* AR 667 (Nov. 2018: examining physician, in

22    providing a functional assessment of Plaintiff's *physical* abilities, opining that

23    Plaintiff's autism "seems to have improved remarkably.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

c.    _Rest Breaks & Attendance_

Despite finding Dr. Lontz's opinion "generally persuasive," the ALJ did not address or incorporate into Plaintiff's RFC Dr. Lontz's recommendation encouraging Plaintiff to take "frequent breaks of short duration (e.g., 15 minute breaks every 60–90 minutes during the workday.)"[53]  Notably, examining psychologists Dr. Marks and Dr. Metoyer both indicated that Plaintiff's psychological symptoms would cause moderate (defined as "significant") limitations in his ability to complete a normal workday and workweek.[54]  Even the state-agency reviewing physicians—whom the ALJ found persuasive—opined that Plaintiff would be moderately limited in this area, with Dr. Eather explaining that Plaintiff would have "occasional interruptions" from his psychological symptoms.[55]

The ALJ erred by failing to address medical opinions and other evidence suggesting that, if employed full time, Plaintiff would likely need extra rest breaks and/or experience significant interruptions based on his mental impairments. According to the vocational expert's testimony, frequent breaks and/or

---

[53] AR 971.  The ALJ did mention, however, that a consultative medical examination indicated Plaintiff's _physical_ limitations would not cause him to require extra breaks. AR 24.

[54] AR 604, 662

[55] AR 110, 121; _see also_ AR 136, 149.

1    interruptions would likely exceed the maximum amount of off-task time allowed in

2    competitive employment.[56]   The ALJ's error is therefore consequential.

3    ### 2.    Dr. Marks: Plaintiff shows consequential error.

4        In February 2018, N.K. Marks, PhD, performed a psychological evaluation of

5    Plaintiff.[57]  As relevant here, Dr. Marks opined that Plaintiff would have a severe

6    limitation in his ability to communicate and perform effectively in a work setting.

7    Dr. Marks also assessed marked limitations in Plaintiff's abilities to ask simple

8    questions or request assistance, to complete a normal workday and workweek

9    without interruptions from psychologically based symptoms, and to set realistic

10   goals and plan independently.[58]

11       The ALJ found Dr. Marks' opinion unpersuasive for five reasons: (1) the

12   opinion was based on a one-time examination, (2) it was "mostly in checkbox form

13   with no meaningful explanation for ratings assessed," (3) Dr. Marks provided "only

14   cursory evaluation with no significant testing or records review aside from

15   referencing Dr. Lontz's consultative evaluation from 2016," (4) the opined

16   limitations are inconsistent with the medical evidence and Plaintiff's testimony,

17

18

19   _____

20   [56] *See* AR 74, 101 (opining that employers would not tolerate a worker being off

21   task more than 10% of the time).

22   [57] AR 601–06.

23   [58] AR 603–04.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

and (5) the limitations are inconsistent with Plaintiff's activities of daily living.[59]

Plaintiff argues the ALJ's reasons are insufficient.[60]

### a.    *Familiarity, Form, & Supportability Factors*

The ALJ's first three reasons fail.  It is true that Dr. Marks examined Plaintiff once and presented her opinion on a mostly checkbox form.  But the state-agency reviewing physicians did not examine Plaintiff at all, they also used checkbox forms, and they provided far less explanation than did Dr. Marks.[61]  Because the ALJ did not similarly discount the reviewing state-agency opinions, instead finding them more persuasive, these are not legitimate bases for discounting Dr. Marks' examining opinion.[62]

More—and contrary to the ALJ's assertions—Dr. Marks' evaluation was well supported and explained.[63]  In examining Plaintiff, Dr. Marks not only reviewed

---

[59] AR 31.

[60] ECF No. 14 at 13.

[61] *See* AR 103–24, 127–52.

[62] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

[63] In assessing persuasiveness, that an opinion is expressed via checkbox form is relevant only to the extent that it informs other factors, such as supportability and consistency. *See* 20 C.F.R. § 404.1520c; *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any

1   Dr. Lontz's September 2016 evaluation, but she also conducted her own clinical

2   interview of Plaintiff and administered additional tests/assessments.[64]  Dr. Marks'

3   explanations included personal observations in support of her findings.  For

4   instance, Dr. Marks described Plaintiff as a "[v]ery pleasant, cooperative young

5   man who shows difficulty with reciprocity, giving too much information at times

6   (tangential explanations to get all the details in), little self-awareness, [and] poor

7   math skills.  His communication was overly formal and pedantic."[65]  Dr. Marks

8   continued, "He presents with a vocal tic in which he repeats sounds multiple times

9   in beginning, middle and end of words.  He is difficult to follow for the untrained

10

11

12

13

14

15   _____

16   less reliable than any other type of form; indeed, agency physicians routinely use

17   these types of forms to assess the intensity, persistence, or limiting effects of

18   impairments.").

19   [64] *See* AR 603–605 (including the Beck Depression Inventory, the Beck Anxiety

20   Inventory, a Mental Status Exam, and memory tests for immediate simple recall,

21   immediate complex recall, multistep recall, sentence structure, digits forward,

22   digits backward, mental math, and delayed recall).

23   [65] AR 978.

1    listener."[66]  Dr. Marks observed that Plaintiff "wants to work, but his conditions

2    will present challenges.  He is difficult to understand."[67]

3            b.    *Consistency Factor*

4            The ALJ found Dr. Marks' opinion inconsistent with Plaintiff's presentation

5    upon examination.  The ALJ explained, "Although Dr. Marks noted claimant had

6    an anxious mood/affect and exhibited some communication deficits due to his vocal

7    tic, the examiner indicated claimant was otherwise within normal limits on all

8    mental status categories (e.g., attitude/behavior (open, cooperative, verbal),

9    thought process/content, orientation, perception, memory, fund of knowledge,

10   concentration, abstract thought, and insight/judgment)."[68]  The ALJ found the

11   opined marked limitations inconsistent with Plaintiff's reported activities of daily

12   living.[69]  The ALJ also focused on Plaintiff's memory, saying, "Notably, in contrast

13   to Dr. Lontz's findings, Dr. Marks indicated claimant was within normal limits for

14

15

16   [66] AR 978; *see also* AR 977 (Again saying, "His communication was difficult to

17   understand.  He sometimes gave too much information.  Language was overly

18   formal.").

19   [67] AR 979.

20   [68] *See* AR 31 ("Although Dr. Marks noted claimant had an anxious mood/affect and

21   exhibited some communication deficits due to his vocal tic, the examiner indicated

22   claimant was otherwise within normal limits on all mental status categories. . . .").

23   [69] *See* AR 31.

1    immediate memory, working memory ('good'), long-term memory, and memory for

2    both simple and complex directives."[70]

3        The ALJ failed to articulate any meaningful inconsistency.  Nothing in the

4    record suggests that someone who presents as cooperative and within normal

5    limits as to concentration and memory cannot also be markedly limited in his

6    ability to request assistance and/or complete a normal work schedule without

7    interruptions from psychologically based symptoms.[71]  Neither Dr. Lontz nor

8    Dr. Marks indicated Plaintiff's communication limitations were memory based, and

9    Plaintiff's longitudinal history shows he has consistently presented as polite and

10   engaged while still demonstrating significant communication deficits since

11   childhood.[72]  Further, as already discussed regarding Dr. Lontz's opinion, the ALJ

12

13   [70] AR 31.

14   [71] *See* AR 603–04. *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)

15   (holding claimant's "good eye contact, organized and logical thought content, and

16   focused attention" did not contradict his reported symptoms of depression and

17   social anxiety).

18   [72] Though Plaintiff's school-age records predate the relevant period (and Plaintiff

19   does not base any arguments on them), many such records contain medical

20   opinions, observations, and findings that are remarkably similar to those found in

21   later psychological evaluations.  For example, in May 2007, psychologist Laura

22   Horan evaluated Plaintiff for purposes of special-education needs.  Plaintiff

23   presented as "extremely polite and considerate," with good eye-contact. AR 551.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19

did not explain how Dr. Marks' opined limitations are inconsistent with any of Plaintiff's reported activities.

Moreover, the evidence underlying the opinions of Dr. Marks and Dr. Lontz—even regarding Plaintiff's memory—is largely consistent. While Dr. Lontz concluded that Plaintiff's memory was "generally within the reduced range," he also found that Plaintiff's test results for memory were "somewhat inconsistent" and "quite variable."[73] Indeed, Dr. Lontz had observed Plaintiff "presented a very good memory to details."[74]  It is therefore unsurprising that Dr. Marks decided not to include significant memory-related limitations in her assessment.

The consistency inquiry is not simply a comparison of medical *opinions*; rather, the ALJ must compare the opinion at issue against "the *evidence* from other

---

But Dr. Horan noted that Plaintiff had "an extended history of difficulties with verbal and nonverbal communication and social interaction," and she found he continued to exhibit "difficulties with social thinking/social communication." AR 539, 551.  Dr. Horan observed "a number of language strengths as well as areas of weakness in communication." AR 551.  She explained that Plaintiff's responses were "overly formal" and, "though they seemed to answer the question in substance, they felt awkward to the examiner." AR 548.

[73] AR 964, 968.

[74] AR 965.

medical sources and nonmedical sources."[75]   The ALJ's decision neither articulates

a discrepancy in the underlying evidence, nor offers any explanation for why

Dr. Marks' opinion is rendered less persuasive by the two doctors arriving at

slightly different conclusions when presented with mixed and borderline test

results.[76]   Because the ALJ's consistency findings lack meaningful explanation

supported by substantial evidence, the ALJ consequentially erred.[77]

**B.    Plaintiff's Reports: Plaintiff seemingly overestimated his abilities.**

Because the ALJ's assessment of the medical evidence impacted the rest of

his sequential analysis, the Court need not address Plaintiff's remaining claims.

That said, in assessing Plaintiff's reported symptoms and activities of daily living,

the ALJ neglected to address a potentially critical factor: Plaintiff's apparent

proclivity to overestimate his own abilities.

**1.    <u>Dr. Lontz's and Dr. Marks' Reports</u>**

In his report, Dr. Lontz highlighted several indications that Plaintiff is a

poor judge of his own abilities.  Plaintiff told Dr. Lontz that geometry was his best

academic subject, explaining this was because "you have to follow certain rules in

order to yield a certain result."[78]   A sentiment which Plaintiff repeated during the

---

[75] *See* 20 C.F.R. § 404.1520c(c)(1) (emphasis added).

[76] *Cf. Orn*, 495 F.3d at 632 (noting the distinction between clinical findings and a physician's conclusions based on those findings).

[77] *See Nguyen v. Chater*, 100 F.3d 1362, 164 (9th Cir. 1996).

[78] AR 608; *see also* AR 611.

1    January 2020 hearing, when he denied having any problems mathematics and

2    again said it was his best school subject.[79]  Based on Plaintiff's statement to him,

3    Dr. Lontz found it noteworthy that math was the subject in which Plaintiff tested

4    the lowest; Plaintiff had "clearly demonstrated difficulties . . . (e.g., counted simple

5    arithmetic on his fingers)" when presented with questions "much simpler than

6    geometry."[80]

7         Dr. Lontz observed that Plaintiff "exhibited variable awareness of his

8    performance while testing (e.g., believed he 'flunked' some tests on which he

9    performed quite well yet encountered time failures on other tests that were more

10   challenging to him."[81]  Similarly, Dr. Marks later found that Plaintiff exhibited

11   "little self-awareness."[82]  And, in interpreting Plaintiff's personality-inventory

12   results, Dr. Lontz concluded that Plaintiff's profile "indicated a tendency to engage

13   in deliberate, unsophisticated, or self-conscious attempts at appearing virtuous

14   (i.e., denial of those minor imperfections to which most would admit)."[83]  Thus,

15   Dr. Lontz's 2016 report, Dr. Marks' 2018 report, as well as other evidence of

16

17

18   _____

19   [79] AR 54.

20   [80] AR 611.

21   [81] AR 609.

22   [82] AR 603.  Dr. Marks also noted Plaintiff's "poor math skills." *Id.*

23   [83] AR 612.

1    record,[84] suggest that Plaintiff did not always accurately assess his own limitations

2    and likely exaggerated and/or overestimated some of his abilities—particularly

3    when reporting them to others.[85]

4    ### 2.    Functional Reports by Plaintiff's Parents

5          In 2018, Plaintiff's mother and father—who were well positioned to observe

6    Plaintiff's daily activities—each filled out a function report on his behalf.[86]  Both

7    indicate that Plaintiff sometimes overestimates his abilities.  Plaintiff's mother

8    stated that he "likes to please" and he sometimes "assumes he has [something] all

9    figured out," only to become overly frustrated when someone has to assist him.[87]

10   _____

11   [84] *See, e.g.*, AR 395 (March 2018: state-agency interviewer observing, "He seemed to

12   lack comprehension of the meaning of when his employment ended as he would say

13   statements such as 'well I really don't know, I don't think I stopped working.' This

14   would seemingly contradict the facts about his employment history.").

15   [85] Dr. Lontz further indicated that Plaintiff's autism-spectrum disorder was likely

16   the reason why he was able to test relatively high in areas of general knowledge

17   and yet struggle to *apply* such knowledge. AR 612.  Given this discrepancy, it is

18   foreseeable that Plaintiff's level of general knowledge would sometimes cause

19   someone—possibly even Plaintiff—to have an exaggerated impression of his overall

20   abilities.

21   [86] Plaintiff lives on his parents' property, in a small apartment attached to their

22   garage. AR 56, 83.

23   [87] *See* AR 385.

She further explained, "If he does not understand something, he is not able to convey that because he assumes people are speaking literally and therefore mistakenly thinks he has the grasp of the situation."[88]

Both parents also went into detail about how Plaintiff frequently needs reminders, supervision, and/or direct assistance to complete simple tasks such as washing dishes and yardwork.[89]  More, the family hired a caretaker who comes twice weekly to check on Plaintiff and assist him with any neglected household chores.[90]  Such evidence suggests that Plaintiff's reports regarding managing his own activities of daily living, "including his personal care/hygiene, cooking his own meals, doing his own cleaning, [and] paying his own bills," likely reflect Plaintiff holding an exaggerated view of his own abilities and contributions.[91]

---

[88] AR 388; *see also* AR 390 ("[I]f there are things he doesn't understand when conversations get complex[,] he doesn't know the questions to ask to attain comprehension.").

[89] *See* AR 372–381, 419; *see also* AR 418–19 (reporting that Plaintiff needs reminders to shave). AR 418–19.

[90] AR 93.

[91] *See* AR 26 (citing AR 602), *c.f. also*, *e.g.*, AR 665 (Plaintiff reporting doing his own cleaning, laundry, and shopping as needed.). *Compare also*, *e.g.*, AR 665 (Plaintiff reporting that he "takes care of his animals, like chickens and rabbits."), *with*, *e.g.*, AR 378 (Plaintiff's father clarifying that while Plaintiff may help with

### 3.    <u>The ALJ's Lack of Discussion</u>

Throughout his analysis, the ALJ repeatedly cited apparent inconsistencies with Plaintiff's reports as cause for discounting certain evidence. But, as demonstrated above, and as Plaintiff argues on appeal, the overall record strongly suggests that his autism-spectrum disorder "makes it so he is not always aware of his own limitations and need for assistance."[92] When assessing a claimant's statements, the ALJ must be mindful as to the context and potential explanations for apparent inconsistencies.[93] The ALJ, however, did not address whether, or to what extent, Plaintiff's lack of self-awareness impacted his reports or contributed to the apparent inconsistencies relied upon by the ALJ throughout his analysis.[94]

**C.    Reversal: Plaintiff shows an immediate award is appropriate.**

Remand for further administrative proceedings is the usual course when a harmful error occurs in the administrative proceeding, except in rare

_____

feeding and providing water, it is Plaintiff's mother who truly "provides all care" for their animals.).

[92] ECF No. 14 at 11.

[93] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Garcia v. Comm'r of Social Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) ("[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." (cleaned up)).

[94] *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify and explain a perceived conflict to permit meaningful review).

circumstances.[95]  This is a case of rare circumstances.  First, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Lontz, Dr. Marks, and Dr. Metoyer.[96]

Second, the Court finds further administrative proceedings would be of no benefit.[97]  The Commissioner has had two opportunities to develop the record and conduct administrative hearings.  Notably, when the Appeals Council previously remanded this case to the ALJ in August 2020, the Council expressly faulted the ALJ's assessment of the medical-opinion evidence—calling special attention to those of Dr. Lontz and Dr. Marks.[98]  Squarely before the ALJ on remand was to what extent Plaintiff's psychological symptoms limit his abilities to communicate effectively in the workplace and to complete a normal workday and workweek without interruption.  "Allowing the Commissioner to decide the issue again would

---

[95] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[96] *See Treichler*, 775 F.3d at 1100–01.

[97] *See id.* at 1101.

[98] AR 176–77 ("The decision does not explain how Dr. Marks' opinion regarding 'moderate,' 'marked,' and 'severe' limitations (in areas that include communication, performing tasks without special supervision, and completing a normal workday and work week) is not supported by her own objective findings and explanation, or consistent with evidence from other medical and nonmedical sources, including the evaluation of Dr. Lontz . . . .").

1    create an unfair 'heads we win; tails, let's play again' system of disability benefits

2    adjudication."[99]  The Court therefore finds it appropriate to credit-as-true the

3    opinions of Dr. Lontz and Dr. Marks.

4           Third, when the improperly rejected medical opinions are fully credited, the

5    vocational expert's testimony requires a finding that Plaintiff is disabled.[100]

6    Dr. Marks' opinion, supported by Dr. Lontz's opinion, establishes that Plaintiff

7    would have "very significant" difficulties with asking simple questions and/or

8    requesting assistance, and that he would be unable to communicate and perform

9    effectively in a work setting.[101]  Plaintiff would also have "very significant" issues

10    with completing a normal workday and workweek without interruptions from his

11    psychologically based symptoms.[102]  These limitations—as reflected in the record

12    overall—make clear that effectively communicating with Plaintiff and keeping him

13    on task and productive in the work environment would require more instruction

14    and supervision than is tolerated in completive employment.[103]

15    _____

16    [99] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

17    [100] *See Treichler*, 775 F.3d at 1101.

18    [101] *See* AR 603–04, 966–71.

19    [102] *See* AR 604, 971.

20    [103] *See* AR 99–100 (testifying that, after the employee's initial 30 days of training,

21    employers are unlikely to tolerate anything more than "15 percent involvement

22    from the supervisor"); *see also* AR 74, 101 (testifying that employers will not

23    tolerate an employee being nonproductive more than 10% of the time).

1

## V.    Conclusion

2    Plaintiff establishes the ALJ reversibly erred.  And the Court finds this is

3  one of the rare cases in which remand for an immediate award of benefits is

4  warranted.

5    Accordingly, **IT IS HEREBY ORDERED**:

6    1.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is

7        **GRANTED**.

8    2.    The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is

9        **DENIED**.

10    3.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

11    4.    The decision of the ALJ is **REVERSED**, and this matter is

12        **REMANDED** to the Commissioner of Social Security for immediate

13        calculation and award of benefits.

14    5.    The case shall be **CLOSED**.

15    IT IS SO ORDERED. The Clerk's Office is directed to file this order and

16  provide copies to all counsel.

17    DATED this 3rd day of February 2023.

18    _____
19        EDWARD F. SHEA
20      Senior United States District Judge

21

22

23